IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT,<br><br>Defendant. | Case No. 3:20-cr-42<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Drew H. Wrigley, United States Attorney for the District of North Dakota, Dawn M. Deitz, Assistant United States Attorney, and Lori H. Conroy, Assistant United States Attorney; Defendant, DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT; and Defendant's counsel, Chris Snyder, agree to the following:

1. Defendant acknowledges the Indictment charges violations of Title 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(c)(1)(A), 924(d), 1956(h), and 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, 853, and 856; and 28 U.S.C. 2461(c).

2. Defendant has read the charges and Defendant's attorney has fully explained the charges to Defendant.

3. Defendant fully understands the nature and elements of the charged crimes.

4. Defendant will voluntarily plead guilty to Counts One, Two, Four, Five, Six, Eight, and Thirteen of the Indictment, and admit to forfeiture allegation.

5. The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6. Defendant will plead guilty because Defendant is in fact guilty of the charges. In pleading guilty to Counts One, Two, Four, Five, Six, Eight, and Thirteen, Defendant acknowledges that:

Count One:  Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance
a. From in or about 2015 and continuing through the date of this Indictment, in the District of North Dakota, and elsewhere, the Defendant knowingly and intentionally combined, conspired, confederated, and agreed together and with others, both known and unknown to the grand jury, to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2;
b. In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts: It was a part of said conspiracy that the defendants and others would and did distribute and possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in or near the Turtle Mountain Indian Reservation, Spirit Lake Indian Reservation, and Fort Berthold Indian Reservation, North Dakota, and elsewhere, including but not limited to the following:
   1. On or about January 24, 2017, BAQUAN SLEDGE, a/k/a RELL, A/K/A TJ, A/K/A MATTHEW PIERCE, individually, and by aiding and abetting, distributed approximately five pills containing a detectable amount of oxycodone in Ward County, North Dakota;
      i. On or about July 26, 2019, DERRICK WALKER II, a/k/a

  COUNTRY, a/k/a KUNT, and KASANDRA GRANT, a/k/a KASSIE, individually, and by aiding and abetting, distributed approximately 30 pills containing a detectable amount of oxycodone in Rolette County, North Dakota;

  ii. On or about August 21, 2019, DARIUS SLEDGE, a/k/a ACE, a/k/a MAN MAN, a/k/a FRANK, a/k/a FRANK LOVE, a/k/a GARY, a/k/a BILL, possessed with intent to distribute approximately 30 pills containing a detectable amount of oxycodone on or near the Turtle Mountain Indian Reservation in Rolette County, North Dakota;

  iii. On or about October 18, 2019, TERRENCE JOHNSON, a/k/a T, a/k/a TERRANCE PRESS JOHNSON JR.; DEANTE EDWARDS, a/k/a TAY; ANTHONY WADE, a/k/a BLUE; CALVIN DUBOIS; EDWARD DUBOIS, a/k/a BABY D; and CHANTEL LONGIE, individually, and by aiding and abetting, possessed with intent to distribute approximately 230 pills containing a detectable amount of oxycodone on or near the Turtle Mountain Indian Reservation in Rolette County, North Dakota;

  iv. On or about November 3, 2019, DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT; and IRA MAE SNELL, individually, and by aiding and abetting, possessed with intent to distribute approximately 43 pills containing a detectable amount of oxycodone on or near the Spirit Lake Indian Reservation in Benson County, North Dakota;

2. It was further a part of said conspiracy that certain conspirators sought and located users of oxycodone to purchase controlled substances from other conspirators;

3. It was further a part of said conspiracy that certain conspirators sought and located sub-distributors of oxycodone for other conspirators;

4. It was further a part of said conspiracy that one or more conspirators possessed firearms to protect their supply of controlled substances and their drug trafficking activity in North Dakota and elsewhere;

  i. On or about June 19, 2019, DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT, possessed one Diamondback Firearm, Model DB15PCB7, AR-15 Semi-Automatic pistol, Serial Number DB1918287, and one Glock USA, Model 43, 9mm pistol, Serial Number ADFE986, on or near the Fort Berthold Indian Reservation in McKenzie County, North Dakota;

  ii. On or about August 8, 2019, TERRENCE JOHNSON, a/k/a T, a/k/a TERRANCE PRESS JOHNSON JR., possessed one Ruger, Model P90, .45 caliber pistol, Serial Number 660-29995, on or near the Turtle Mountain Indian Reservation in Rolette County,

3

      North Dakota;

  iii. On or about October 18, 2019, TERRENCE JOHNSON, a/k/a T, a/k/a TERRANCE PRESS JOHNSON JR., possessed one Sig Sauer, Model P365, 9mm caliber pistol, Serial Number 66A021442, and one Mossberg, Model 500C, 20 gauge shotgun with pistol grip, Serial Number L219959, on or near the Turtle Mountain Indian Reservation in Rolette County, North Dakota;

  iv. On or about October 18, 2019, ANTHONY WADE, a/k/a BLUE, possessed one Smith & Wesson, Model M&P Bodyguard, 380 caliber pistol, Serial Number KBP3731, on or near the Turtle Mountain Indian Reservation in Rolette County, North Dakota;

  v. On or about November 5, 2019, DONDIAGO JONES, A/K/A AGO, A/K/A DONDI, A/K/A FRANK, possessed one Savage Arms, Model Mark II, .22 caliber rifle, Serial Number 2112032, on or near the Turtle Mountain Indian Reservation in Bottineau County, North Dakota;

5. It was further a part of said conspiracy that one or more conspirators received money wire transfers that were proceeds of oxycodone sales;
6. It was further a part of said conspiracy that one or more conspirators sent money wire transfers that were proceeds of oxycodone sales;
7. It was further a part of said conspiracy that one or more conspirators traveled between the states of Michigan and North Dakota, and elsewhere, to obtain, transport, and distribute oxycodone;
8. It was further a part of said conspiracy that one or more conspirators acquired automobiles, including rental cars, to transport and distribute oxycodone in North Dakota, and elsewhere;
9. It was further a part of said conspiracy that one or more conspirators rented and occupied apartments and hotel rooms in North Dakota, and elsewhere, from which to store, possess, and distribute oxycodone;
10. It was further a part of said conspiracy that DARIUS SLEDGE, a/k/a ACE, a/k/a MAN MAN, a/k/a FRANK, a/k/a FRANK LOVE, a/k/a GARY, a/k/a BILL; DONDIAGO JONES, a/k/a AGO, a/k/a DONDI, a/k/a FRANK; DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT; TERRENCE JOHNSON, a/k/a T, a/k/a TERRANCE PRESS JOHNSON JR.; DEANTE EDWARDS, a/k/a TAY; ANTHONY WADE, a/k/a BLUE; LILLIAN LEE, a/k/a CHASITIY SMITH, a/k/a LET LET, a/k/a LELE; TWON STEPFONE BOYD, a/k/a YO BOY, a/k/a D; CALVIN DUBOIS; KERRY MORIN; CONSTANCE AIKEN, and others, did occupy houses on or near the Turtle Mountain Indian Reservation in North Dakota, and elsewhere, from which to store, possess, and distribute oxycodone, a Schedule II controlled substance;
11. It was further a part of said conspiracy that BAQUAN SLEDGE, a/k/a RELL, a/k/a TJ, a/k/a MATTHEW PIERCE; DONDIAGO JONES,

a/k/a AGO, a/k/a DONDI, a/k/a FRANK; DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT; IRA MAE SNELL; GRAYSON DYE; MARTINA WHITETAIL, a/k/a TINA WHITETAIL; ROBERT TOUCHE, and others, did occupy houses on or near the Spirit Lake Indian Reservation in North Dakota, and elsewhere, from which to store, possess, and distribute oxycodone, a Schedule II controlled substance;

12. It was further a part of said conspiracy that one or more conspirators collected money from other persons to purchase pills containing oxycodone;
13. It was further a part of said conspiracy that one or more conspirators would and did attempt to conceal their activities;
14. It was further a part of said conspiracy that one or more conspirators would and did use United States currency in their drug transactions; and
15. It was further a part of said conspiracy that one or more conspirators would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of oxycodone;

c. Defendant acknowledges sufficient facts exist to sustain a finding of guilt in violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

Count Two: Money Laundering Conspiracy

a. From in or about 2015 and continuing through the date of this Indictment, in the District of North Dakota, and elsewhere, the Defendant did knowingly combine, conspire, and agree with one or more persons, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956(h), to wit: to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, knowingly and intentionally distributing controlled substances: (a) with intent to promote the carrying on of the specified unlawful activity; and (b) knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i);

b. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

1. BAQUAN SLEDGE, a/k/a RELL, a/k/a TJ, a/k/a MATTHEW PIERCE; DARIUS SLEDGE, a/k/a ACE, a/k/a MAN MAN, a/k/a FRANK, a/k/a FRANK LOVE, a/k/a GARY, a/k/a BILL; DONDIAGO JONES, a/k/a AGO, a/k/a DONDI, a/k/a FRANK; DERRICK WALKER II, a/k/a COUNTRY, a/k/a KUNT; TERRENCE JOHNSON, a/k/a T, a/k/a TERRANCE PRESS JOHNSON JR.; ANTHONY WADE, a/k/a

BLUE; LILLIAN LEE, a/k/a CHASITIY SMITH, a/k/a LET LET, a/k/a LELE; EDWARD DUBOIS, a/k/a BABY D; SHANAE DUBOIS, and co-conspirators, acquired oxycodone, a Schedule II controlled substance, outside of the District of North Dakota for distribution. The oxycodone was thereafter transported through, and distributed in, the District of North Dakota, and elsewhere, during the time frame of the conspiracy;
2. Members of the controlled substance distribution conspiracy organization would sell oxycodone, and currency would be collected and transferred from one person to another to continue the ongoing illegal activity; and
3. During the course of this conspiracy, persons both known and unknown to the Grand Jury, utilized money transfer services, such as Walmart-to-Walmart (RFI Financial) and MoneyGram money services, to wire and transfer proceeds of the illegal drug sales from North Dakota to Michigan, and elsewhere, with intent to disguise and conceal the nature, the location, the source, the ownership, and the control of the proceeds of the drug trafficking activity, and to promote and continue the distribution activity;
c. Defendant acknowledges sufficient facts exist to sustain a finding of guilt in violation of Title 18, United States Code, Section 1956(h).

Count Five: Possession of a Firearm by a Convicted Felon
a. In or about June 2019, in the District of North Dakota, the Defendant, knowing that he had previously been convicted in any court of the following crime punishable by imprisonment for a term exceeding one year, that is: Criminal Mischief, a Class C Felony, on or about February 7, 2019, in Montrail County, North Central Judicial District, North Dakota, Case Number 31-2019-CR-00028, did knowingly possess in and affecting commerce a firearm, that is: One Diamondback Firearm, Model DB15PCB7, AR-15 Semi-Automatic pistol, Serial Number DB1918287; and One Glock USA, Model 43, 9mm pistol, Serial Number ADFE986;
b. Defendant acknowledges sufficient facts exist to sustain a finding of guilt in violation of Title 18, United States Code, Sections 922(g)(1), and 924(a)(2).

Count Six: Distribution of Oxycodone
a. In or about July 2019, in the District of North Dakota, the Defendant, individually, and by aiding and abetting, knowingly and intentionally distributed approximately 30 pills of a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance;
b. Defendant acknowledges sufficient facts exist to sustain a finding of guilt in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

Count Eight:  Maintaining a Drug-Involved Premises
a. From in or about August 2019 and continuing through the date of this Indictment, in the District of North Dakota, and elsewhere the Defendant and others knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, specifically, a residence on or near the Spirit Lake Indian Reservation in North Dakota, for the purpose of distributing and using oxycodone, a Schedule II controlled substance;
b. Defendant acknowledges sufficient facts exist to sustain a finding of guilt in violation of Title 21, United States Code, Section 856, and Title 18, United States Code, Section 2.

Count Thirteen:  Possession with Intent to Distribute Oxycodone
a. In or about November 2019, in the District of North Dakota, the Defendant, individually, and by aiding and abetting, knowingly and intentionally possessed with intent to distribute approximately 43 pills of a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance;
b. Defendant acknowledges sufficient facts exist to sustain a finding of guilt in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

Forfeiture One:
The Defendant agrees to forfeit any interest he/she may have to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the violations and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the violations alleged in this Indictment, including, but not limited to, the following: A sum of money equal to $21,781.00 in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in the Indictment.

Forfeiture Two:
The Defendant agrees to forfeit any interest he/she may have to the United States, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of the offense, including, but not limited to:
- One Diamondback Firearms, Model DB15PCB7, AR-15 Semi-Automatic pistol, Serial Number DB1918287;

- One Glock USA, Model 43, 9mm pistol, Serial Number ADFE986;

- One Ruger, Model P90, .45 caliber pistol, Serial Number 660-29995;

- One Sig Sauer, Model P365, 9mm caliber pistol, Serial Number 66A021442;

- One Mossberg, Model 500C, 20 gauge shotgun with pistol grip, Serial Number L219959;

- One Smith and Wesson, Model M&P Bodyguard, 380 caliber pistol, Serial Number KBP3731;

- One Savage Arms, Model Mark II, .22 caliber rifle, Serial Number: 2112032.

7.   Defendant understands the following maximum penalties apply:

Count One:  Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance
Imprisonment:         20 years
Fine:                 $1,000,000
Supervised Release:   3 years mandatory
Special Assessment:   $100

Count Two:  Money Laundering Conspiracy

Imprisonment:         20 years
Fine:                 $250,000
Supervised Release:   1-3 years
Special Assessment:   $100

Count Five:  Possession of Firearms by Convicted Felon

Imprisonment:         10 years
Fine:                 $250,000
Supervised Release:   1-3 years
Special Assessment:   $100

Count Six:  Distribution of Oxycodone

Imprisonment:         20 years
Fine:                 $1,000,000
Supervised Release:   3 years mandatory

Special Assessment:      $100

Count Eight:  Maintaining a Drug-Involved Premise

Imprisonment:            20 years
Fine:                    $500,000
Supervised Release:      1-3 years
Special Assessment:      $100

Count Thirteen:  Possession with Intent to Distribute Oxycodone

Imprisonment:            20 years
Fine:                    $1,000,000
Supervised Release:      3 years mandatory
Special Assessment:      $100

Defendant understands the Court has the discretion to run each count consecutive to one another. Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8. Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a) The right to a speedy public jury trial and related rights as follow:

(i) A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

(ii) If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

(iii) At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

(iv) At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify, but cannot be required to testify.

(b) Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9. Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a), and must consult and take into account the United States'

Sentencing Commission, <u>Guidelines Manual</u>, (Nov. 2018) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11. This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree that the following Sentencing Guidelines are applicable for Defendant's conduct:

| | |
|---|---|
| Oxycodone (10K-30K Kilograms) | 30 (USSG § 2D1.1(c)(4)) |
| Aggravating Role | +2 (USSG § 3B1.1(a)) |
| Money Laundering | +2 (USSG § 2S1.1(b)(2)) |

The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

14. At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a 2-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the

Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17. At sentencing, the United States will:

    (a) Recommend a sentence at the high end of the applicable Guideline range, or the minimum mandatory, whichever is greater;

    (b) Recommend that Defendant be ordered to pay the applicable special assessment fees;

    (c) Recommend that Defendant be ordered to a reasonable period of supervised release;

    (d) Move to dismiss Count 4.

18. Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional

prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19. Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21. **Defendant's Waiver of Appeal.** Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein.

Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

22.     By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23.     The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24. Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

25. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

DREW H. WRIGLEY
United States Attorney

Dated: 12-15-20

By: DAWN M. DEITZ
Assistant United States Attorney

Dated: 12/15/2020

DERRICK WALKER II, A/K/A COUNTRY, A/K/A KUNT
Defendant

Dated: 12-15-2020

CHRIS SNYDER
Attorney for Defendant

16